# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**Not for Publication**

MARIE DERESKY,

   *Plaintiff,*

  v.

B.J. MCGLONE & CO., INC., et al,

   *Defendants.*

Civil Action No. 14-1930

**OPINION**

**John Michael Vazquez, U.S.D.J.**

Plaintiff Marie Deresky briefly worked as a laborer at a construction site, during which time she allegedly suffered sexual harassment and discrimination. Pending before the Court is a motion for summary judgment filed by Defendant B.J. McGlone & Co, Inc. ("McGlone") and Defendant Rigel Gorica (collectively "Defendants"). D.E. 91. Plaintiff filed a brief in opposition, D.E. 94, to which Defendants replied. D.E. 98.[1] The Court reviewed the submissions made in support and in opposition of the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part**.

---

[1] In this Opinion, Defendants' motion for summary judgment (D.E. 91) will be referred to as "Def. Brf." Plaintiff's brief in opposition (D.E. 94) will be referred to as "Pl. Opp." Defendants' reply brief (D.E. 98) will be referred to as "Def. Rep."

## I.   FACTS AND PROCEDURAL HISTORY

### A.  Factual Background

Deresky is a laborer and member of the International Union of North America (the "Union"). Defendants' Statement of Material Facts Not in Dispute ("DSOMF") ¶ 1; D.E. 91-7.[2] McGlone is a New Jersey corporation engaged in the business of interior systems construction, such as drywall insulation and carpentry construction. Complaint ¶ 2. Defendant Gorica was a foreman supervisor for McGlone at the construction site where Plaintiff worked during the relevant time period. DSOMF ¶ 23.

As a Union member, Plaintiff's name was put onto a list, which the Union drew from when assigning members to work sites. *Id.* ¶ 2. The work assignments are always temporary. *Id.* ¶ 4. The process begins with the site's contractor calling the Union or shop steward and asking for a particular number of workers with the requisite skill set. *Id.* ¶ 5. The Union then assigns workers, but the number fluctuates as the work is completed. As fewer workers are needed, the shop steward suggests who should be kept on site and who should return to the Union's list. *Id.* ¶ 6. Thus, the nature of Plaintiff's position is that the Union assigns her work, she completes the job, she is laid off, and the Union then assigns her to a new job. *Id.* ¶ 7.

In February 2013, the Union assigned Plaintiff to work as a laborer at the Bayer Facility (the "site"). *Id.* ¶ 10. Genesys Construction ("Genesys") was the general contractor, *id.* ¶ 11, and McGlone was another contractor on the site. Def. Brf.; Ex. C, Marie Deresky Deposition ("Deresky Depo.") 50:14-24; D.E. 91-5. McGlone "was the paymaster because they were union, Genesys was not." *Id.* 59:24-25.

---

[2] The Opinion cites to Defendants' Statement of Material Facts Not in Dispute unless the parties disagree about the fact(s) or supplemental information is necessary.

Plaintiff believes that she was the only female laborer working for McGlone at the site. Plaintiff's Supplemental Statement of Material Facts ("PSSMF") ¶ 3. On June 28, 2013, another Union member working at the site, John Nini, slapped Plaintiff on her backside. DSOMF ¶ 13; Deresky Depo. 73:16-21. Following Genesys' protocol, Plaintiff reported the incident to Ron Flexon, a Genesys superintendent, later that same day. DSOMF ¶¶ 14-16. Flexon was already aware of the incident as Nini had self-reported his behavior. *Id.* ¶ 17. Plaintiff asked that Nini be terminated from the site, but Genesys did "basically nothing" about the incident. DSOMF ¶¶ 17-18: PSSMF ¶ 5. Plaintiff then reported the incident to the Union, which also took no action. DSOMF ¶ 20. McGlone then learned of the incident and immediately removed Nini from the site. *Id.* ¶ 22.

In addition to the Nini incident, Plaintiff claims that she experienced many other instances of sexual harassment and discrimination, largely related to Gorica. As the McGlone foreman, Gorica assigned the laborers to specific jobs for the various projects. Plaintiff's Responsive Statement of Material Facts ("PRSMF") ¶ 24. Plaintiff's complaints against Gorica vary. For example, Plaintiff alleges that on her first day, Gorica, in front of the other laborers, told Plaintiff that "women in Albania are underfoot" while smushing his own foot into the ground. Deresky Depo. 101:8-11. Gorica was born in Albania. PSSMF ¶ 10.[3] Gorica then directed Plaintiff to work alone, while the other male laborers worked in pairs for safety reasons. PSSMF ¶ 6. Gorica continued to direct Plaintiff to work alone, even when she had to carry heavy objects. *Id.* ¶ 16. Further, if Gorica did assign another laborer to work with Plaintiff, he told the male laborer to not speak to Plaintiff. *Id.* ¶ 15.

---

[3] Plaintiff attaches a Wikipedia article on the "Culture of Albania" to her brief in opposition. D.E. 94-3. Plaintiff provides no legal basis for the Court to consider the article, nor is the Court aware of one. The Court does not consider the article in deciding the motion.

The list of alleged misconduct goes on. Gorica allegedly tried to send Plaintiff home after she returned from a sick day. *Id.* ¶ 17. Another time, in front of other laborers, Gorica told Plaintiff "to stop being a bitch and go home and take a nap like other women." *Id.* ¶ 18. Gorica assigned tasks requiring specialized work certifications to non-certified workers rather than to Plaintiff, who held numerous certifications. *Id.* ¶¶ 1, 19. On days where the laborers watered fields all day, Gorica would drive the men back to the trailer but leave Plaintiff to walk. *Id.* ¶ 20. Gorica denies all this behavior as well as all the other allegations brought against him. *Id.* ¶¶ 7-10, 15-16.

Plaintiff was apparently not the only laborer who Gorica mistreated. Other workers complained to Plaintiff about Gorica's discriminatory treatment of them due their race or age. Deresky Depo. 106:10-25. Plaintiff testified that "[b]asically [Gorica] discriminated, and he treated you—the whole crew like we lived in Albania, and we had no rights as an American to even speak or talk or—and then—then he especially picked on me, I believe because I was a woman[.]" *Id.* 101:3-7. Plaintiff believes that Gorica treated everyone poorly, unless that person was Albanian. DSOMF ¶ 25, PRSMF ¶ 25.

As Plaintiff told others about Gorica's behavior towards her, some of the behavior abated. For example, after Plaintiff complained that Gorica would not give her a ride back from the field, he agreed to drive Plaintiff with the other laborers. DSOMF ¶ 32. And after Plaintiff complained that Gorica would not assign her overtime, she became one of the top five workers in receiving overtime. *Id.* ¶ 20; Deresky Depo. 112:5-24.

Nevertheless, Plaintiff still felt mistreated, and so she wrote two letters to the Union to the attention of Jose Colon, complaining about her mistreatment and the discrimination she had experienced at the site. PSSMF ¶ 28. The first letter is dated August 13, 2013. It concerns the

Nini incident and the Union and Genesys' lack of response to the incident. Pl. Opp., Ex. B, Nini Letter; D.E. 94-3. The second letter is dated August 15, 2013. It concerns Gorica's behavior towards all the workers at the site, but particularly highlights Gorica not assigning Plaintiff tasks that she was qualified for and his calling her a liar. Pl. Opp., Ex. C, Gorica Letter; D.E. 94-3. She delivered these letters in person to Colon and then met with him regarding the assertions in the letters. Deresky Depo. 124:2-13.

Soon thereafter, Plaintiff was terminated from working at the site. PSSMF ¶ 29.[4] Plaintiff learned of her termination when her shop steward brought her a check and said, "[h]ere, Marie. He did it to you. Here you go." Deresky Depo. 124:20-25. Plaintiff believes that the shop steward was referring to Gorica. Deresky Depo. 125:13-22; PSSMF ¶ 30. Two other laborers were also terminated that day. DSOMF. ¶ 33. Plaintiff believes that seven men remained at the site at the time of her termination, all of whom possessed fewer certifications than Plaintiff. PSSMF ¶ 22.

After her termination, Plaintiff went on disability due to a medical procedure. DSOMF ¶ 35. Plaintiff then returned to work and worked from mid-2015 until the end of January 2017 as a shop steward. *Id.* ¶¶ 38-39. Plaintiff is currently unemployed and receiving disability for three different ailments. *Id.* ¶ 42. She is not receiving mental health treatment or taking medications related to mental health treatment. PRSMF ¶ 37.

**B.      Procedural Background**

On March 27, 2014, Plaintiff filed her Complaint, D.E. 1, followed by an Amended Complaint ("FAC") on May 21, 2014, D.E. 9. In the FAC, Plaintiff alleged four counts pursuant to the New Jersey Law Against Discrimination (the "LAD"): sexual harassment and discrimination

---

[4] Plaintiff appears unsure of the exact date of her termination. It appears to have occurred between August 14th-23rd, 2013. Deresky Depo. 128:14-16, 154:4-9.

against McGlone and Gorica pursuant N.J.S.A. 10:5-12(a) (Count One); sexual harassment and discrimination against General Construction Laborers Local 3 (the "Local") pursuant to N.J.S.A. 10:5-12(b) (Count Two); retaliation against McGlone, Gorica, and the Local pursuant to N.J.S.A. 10:5-12(d) (Count Three); and aiding and abetting against McGlone, Gorica, and the Local pursuant to N.J.S.A. 10:5-12(e) (Count Four). D.E. 1. The Local moved to dismiss the Amended Complaint, and Judge Wigenton granted the motion. D.E. 16, 30.[5] Judge Wigenton denied McGlone and Gorica's motions to dismiss. D.E. 31, 38. On February 29, 2016, the case was reassigned to the undersigned. D.E. 59. Then, on September 29, 2017, Defendants made the current motion for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence

---

[5] Thus, Count II of the FAC is not at issue because it was only brought against the Local.

and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS

Defendants move for summary judgment on multiple grounds. First, Defendants argue that Plaintiff's sexual harassment claims should be dismissed since neither Defendant was involved in or aware of the incident where John Nini slapped Plaintiff's backside. Def. Brf. at 7-9. Second, Defendants argue that Plaintiff's hostile work environment claim should be dismissed because as soon as McGlone learned of the Nini incident, McGlone removed Nini from the site. *Id.* at 9-10.

Third, Defendants argue that Plaintiff's claim for a hostile work environment created by Gorica's conduct also fails because Gorica's behavior was not severe or pervasive. Defendants add that Plaintiff cannot show that the behavior occurred because of her sex. *Id.* at 11-13. Fourth, Defendants argue that Plaintiff's retaliation claim fails because Plaintiff has not alleged that McGlone was involved in her termination. *Id.* at 11-13. Fifth, Defendants argue that Gorica cannot be liable for creating a hostile work environment because he cannot aid and abet his own behavior. *Id.* at 14-17. Finally, Defendants argue that diversity jurisdiction is not proper because of Plaintiff's alleged damages. *Id.* at 17-18.

### A. Diversity Jurisdiction

#### 1. The Amount in Controversy

Defendants argue that Plaintiff has not shown damages above the $75,000 threshold necessary to sustain diversity jurisdiction. To that end, Defendants argue that after Plaintiff was terminated from the site, she went on disability. Def. Brf. at 17. After returning from disability leave, Plaintiff worked as a shop steward at a higher wage than she had previously earned as a laborer. *Id.* Further, Defendants argue that Plaintiff's has not submitted any medical evidence of emotional distress. *Id.* Therefore, Defendants believe that "Plaintiff's claims for damages fall woefully short of the jurisdictional requirement." *Id.* at 18.

Plaintiff responds that the Complaint sufficiently alleges damages in excess of the jurisdictional amount. Plaintiff also claims that Defendants have not shown to a legal certainty that damages in this case fall below the jurisdictional amount. Pl. Opp. at 20. Plaintiff, further, asserts that under New Jersey law, she can recover compensatory damages for emotional distress without providing expert testimony. *Id.* Plaintiff adds that she can recover attorney's fees, "which

are substantial in this case." *Id.* at 21. Lastly, Plaintiff argues that a jury could award her punitive damages. *Id.* at 21-22.

Pursuant to 28 U.S.C. § 1332(a), to sustain a diversity action, the matter in controversy must exceed $75,000 exclusive of interest and costs. It is well settled that in matters where the plaintiff asserts diversity jurisdiction, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *see Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997). However, if a defendant can show "to a legal certainty" that the amount in controversy is $75,000 or below, then diversity jurisdiction is defeated. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 398 (3d Cir. 2004).

Here, Plaintiff seeks damages pursuant to the LAD. Specifically, Plaintiff seeks $25,111 in lost wages benefits and $100,000 in compensatory damages. Def. Brf., Plaintiff's Statement of Damages ("Damages Statement") ¶¶ 2-3; D.E. 91-6. Additionally, Plaintiff seeks attorney's fees and punitive damages. The Court has real concerns about Plaintiff's ability to recover lost wages and benefits. When Plaintiff was terminated from working as a laborer, she went on disability. When she returned from disability leave, the Union assigned her a higher paying position as a shop steward. Thereafter, she took disability leave again. Therefore, it does not appear that Plaintiff was unemployed and waiting for the Union to assign her work for the ten weeks for which she now seeks compensation. The Court also questions Plaintiff's ability to recover a high amount of compensatory damages. As discussed below, Defendants are not liable for damages resulting from John Nini's actions. Because that incident appears to be one of the main bases upon which Plaintiff seeks compensatory damages, any recovery amount will likely be below the $100,000 sought.

Nevertheless, the Court finds that it does not appear to a legal certainty that Plaintiff cannot recover the requisite jurisdictional amount. Determinative here is Plaintiff's claim for

"substantial" attorney's fees." While Section 1332 "generally excludes 'interests and costs' from the amount-in-controversy calculation, attorney's fees are a 'necessary part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action [asserted].'" *Goralski v. Shared Techs., Inc.*, No. CIV.A. 09-2461, 2009 WL 2460752, at *5 (D.N.J. Aug. 7, 2009) (quoting *Suber*, 104 F.3d at 585). The LAD allows a successful plaintiff to recover attorney's fees. *Goralski*, 2009 WL 2460752, at *5 (holding that the jurisdictional requirement was met when the plaintiff asserted claims under the LAD and another statute that allowed for reasonable attorney's fees if the plaintiff's case proved successful). Additionally, if Plaintiff prevails, the LAD provides for the possibility of punitive damages. N.J.S.A. § 10:5-3; *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."). Defendants have not separately moved for summary judgment on the issue of punitive damages. As a result, because the Court is denying Defendants' motion in part, the possibility for a punitive damage award exists. Therefore, the Court denies Defendants' motion to dismiss for lack of subject matter jurisdiction.

### B. The New Jersey Law Against Discrimination

New Jersey enacted the LAD "to protect not only the civil rights of individual aggrieved employees but also to protect the public's strong interest in a discrimination-free workplace." *Lehmann v. Toys R Us, Inc.,* 132 N.J. 587, 600 (1993). As a result, the LAD makes it illegal

> [f]or an employer, because of the race, creed, color, national origin, ancestry, age . . . pregnancy or breastfeeding, sex, gender identity or expression . . . of any individual . . . to refuse to hire or employ or to bar or to discharge or require to retire . . . from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment[.]

N.J.S.A. § 10:5-12(a). New Jersey law divides sexual harassment claims into two categories:

> [q]uid pro quo sexual harassment occurs when an employer
> attempts to make an employee's submission to sexual demands a
> condition of his or her employment. It involves an implicit or
> explicit threat that if the employee does not accede to the sexual
> demands, he or she will lose his or her job, receive unfavorable
> performance reviews, be passed over for promotions, or suffer other
> adverse employment consequences. Hostile work environment
> sexual harassment, by contrast, occurs when an employer or fellow
> employees harass an employee because of his or her sex to the point
> at which the working environment becomes hostile.

*Lehmann*, 132 N.J. at 601. Here, hostile work environment sexual harassment is at issue.

A plaintiff bringing a claim under the LAD for hostile work environment sexual harassment

bears the burden of demonstrating that "'the complained-of conduct (1) would not have occurred

*but for* the employee's gender; and it was (2) *severe or pervasive* enough to make a (3) *reasonable*

*woman* believe that (4) the conditions of employment are altered and the *working environment is*

*hostile or abusive.*'" *Griffin v. City of E. Orange*, 225 N.J. 400, 413–14 (2016) (quoting *Lehmann*,

132 N.J. at 603-604)) (emphasis in original).

The first element requires "a plaintiff [to] show by a preponderance of the evidence that

she suffered discrimination because of her sex." *Lehmann*, 132 N.J. at 604. When the harassing

conduct is "sexual or sexist in nature" this element will be presumed satisfied. *Griffin*, 225 N.J. at

414 (quoting *Lehmann*, 132 N.J. at 605). The second element requires a plaintiff to establish that

the harassing conduct *itself* was severe or pervasive. This requires more than simply showing that

the harassing conduct's *impact* on the plaintiff or the plaintiff's work environment was severe or

pervasive. *Lehmann*, 132 N.J. at 606. Although "it will be a rare and extreme case," a single

incident can be so severe that it will constitute a hostile working environment. *Id.* Generally,

however, "most plaintiffs claiming hostile work environment sexual harassment allege numerous

incidents that, if considered individually, would be insufficiently severe to state a claim, but

considered together are sufficiently pervasive to make the work environment intimidating or

hostile." *Id.* at 607. As a result, "courts must consider the cumulative effect of the various incidents." *Id.* "To satisfy the third and fourth factors, a LAD plaintiff must show 'that her working conditions were affected by the harassment to the point at which a reasonable woman would consider the working environment hostile.'" *Griffin*, 225 N.J. at 414 (quoting *Lehmann*, 132 N.J. at 610).

In cases where a plaintiff seeks to hold an employer liable for sexual harassment committed by a supervisor, agency law applies. *Griffin*, 225 N.J. at 414. Generally, an employer is not liable for its employees' conduct when that conduct falls outside the scope of their employment. *Lehmann*, 132 N.J. at 619. However, the *Restatement (Second) of Agency*, Section 219(2) outlines four exceptions for when an employer may be liable for a supervisor acting outside of his scope of employment. These four exceptions are as follows:

> (1) the master intended the conduct or the consequences, or (2) the master was negligent or reckless, or (3) the conduct violated a non-delegable duty of the master, or (4) the servant purported to act or speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accompanying the tort by the exercise of the agency relation.

*Restatement (Second) of Agency* § 219 (1958). Further, the New Jersey Supreme Court has "recognized two primary categories of claims against employers for sexual harassment committed by their employees under Restatement § 219." *Aguas v. State*, 220 N.J. 494, 512 (2015). The first category "is a direct cause of action against the employer for negligence or recklessness under *Restatement* § 219(2)(b)." *Id.* The second category is for vicarious liability under *Restatement* § 219(2)(d)." *Id.*

Whether an employer is liable for a supervisor's sexual harassment requires a fact-specific inquiry. *Lehmann*, 132 N.J. at 626. An employer will be held vicariously liable if the supervisor acted within the scope of his employment. *Id.*

> Moreover, even if the supervisor acted outside the scope of his or her employment, the employer will be vicariously liable if the employer contributed to the harm through its negligence, intent, or apparent authorization of the harassing conduct, or if the supervisor was aided in the commission of the harassment by the agency relationship.

*Id.* Thus, vicarious liability exists when an employer knew, or should have known, about the harassing conduct and failed to take remedial action. *Nuness v. Simon & Schuster, Inc*, 221 F. Supp. 3d 596, 604 (D.N.J. 2016) (citing *Herman v. Coastal Corp.,* 348 N.J. Super. 1, 25 (N.J. Super. Ct. App. Div. 2002)); *Weston v. Pennsylvania*, 251 F.3d 420, 426–27 (3d Cir. 2001)). An employer is also liable if it "delegates the authority to control the work environment to a supervisor and that supervisor abuses that delegated authority[.]" *Lehmann*, 132 N.J. at 620. However, an employer cannot be liable for harassing conduct when it responds to the conduct in a manner that effectively stops its reoccurrence. *Nuness*, 221 F. Supp. 3d at 604.

Further, an employer can also avoid liability by proving the affirmative defense of having an effective policy against sexual harassment. *Aguas*, 220 N.J. at 517. The affirmative defense works in the following manner. The plaintiff first bears the initial burden of alleging a *prima facie* hostile work environment claim. *Id.* Then, if "no tangible employment action has been taken against the plaintiff," such as termination or demotion, "the defendant employer may assert [a] two-pronged affirmative defense." *Id.* at 524. The defense requires that:

> first, that the employer exercised reasonable care to prevent and to correct promptly sexually harassing behavior; and second, that the plaintiff employee unreasonably failed to take advantage of preventive or corrective opportunities provided by the employer or to otherwise avoid harm.

*Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).[6] After the employer makes this showing, the "employee may rebut the elements of the affirmative defense." *Aguas*, 220 N.J. at 524.

### 1. The Nini Incident

Defendants argue that they are entitled to summary judgment as to John Nini's slapping of Plaintiff on her backside. Def. Brf. at 7, 9. Defendants contend that they were not involved with and had no knowledge of the incident. *Id.* at 8. Further, Defendants point out that Plaintiff testified that when McGlone was made aware of the incident, it immediately removed Nini from the site. *Id.* In its opposition brief, Plaintiff does not address the Nini incident beyond restating that it occurred.

The Court agrees with Defendants. Neither Nini, Genesys, or the Union are presently parties to his action. Plaintiff's allegations make clear who committed the harassing conduct (Nini) and who Plaintiff made aware of the conduct (Genesys and, later, the Union). Further, Plaintiff admits that when McGlone, weeks later, learned of Nini's conduct, Nini was immediately removed from the site. Thus, both parties agree that once McGlone learned of the incident, it took swift remedial actions to end the harassment. Therefore, Defendants are not vicariously liable for the Nini incident. Further, while any harassing conduct is deplorable, Nini's slapping of Plaintiff's backside does not present the "rare and extreme case" in which a single incident creates a hostile work environment. *See Lehmann*, 132 N.J. at 606.

---

[6] New Jersey's affirmative defense for vicarious liability claims under the LAD was adopted from the United States Supreme Court's recognition of an affirmative defense in similar Title VII claims. *Aguas*, 220 N.J. at 519. *See Faragher v. City of Boca Raton,* 524 U.S. 775 (1998); *Burlington Ind. v. Ellerth*, 524 U.S. 742 (1998).

Therefore, Defendants' motion for summary judgment is granted as to Defendants' liability for John Nini's misconduct.

### 2. Gorica's Comments and Conduct Towards Plaintiff

Defendants next move for summary judgment finding that are not liable for Gorica's alleged harassment of Plaintiff. Specifically, Defendants claim that Plaintiff's (1) hostile work environment sexual harassment claim, (3) retaliation claim, and (4) aiding and abetting claim should be dismissed. The Court will address each in turn.

#### a. Hostile Work Environment Sexual Harassment

Defendants' main argument is that Gorica's conduct was neither because of Plaintiff's gender nor was it severe or pervasive. Thus, Defendants challenge the first and second elements of a hostile work environment claim. Citing *Lehmann*, 132 N.J. at 604, Defendants argue that Gorica treated everyone the same (badly) regardless of gender.

Genuine disputes of material fact exist as to the first element, that is whether Gorica harassed Plaintiff because of her gender. Plaintiff bears the burden of showing by a preponderance of the evidence that she suffered discrimination because of her gender. To that end, Plaintiff alleges that Gorica made several sex-based harassing comments to her, which the Court accepts as true for purposes of the current motion. For example, on Plaintiff's first day as a laborer at the site, Gorica, in front of the other male laborers, told Plaintiff that "*women* in Albania are underfoot" while smushing his own foot into the ground. Another time, in front of other laborers, Gorica told Plaintiff "to stop being *a bitch* and go home and take a nap *like other women*." Such comments are facially sexist. Considered cumulatively, in the context of Gorica's other comments and actions, these harassing and sexist statements could convince a reasonable juror that the conduct Plaintiff complained of occurred because of her gender.

Likewise, Defendants' pseudo defense that Gorica was an "equal opportunity offender" is inapplicable here. The New Jersey Supreme court has held that "if a supervisor is equally crude and vulgar to all employees, regardless of their sex, [then there is] no basis exists for a sex harassment claim." *Lehmann*, 132 N.J. at 604. Because "[a]lthough the supervisor may not be a nice person, he is not abusing a plaintiff because of her sex." *Id.* However, here, Gorica's comments directly refer to the female gender in a derogatory manner. This is not a case in which Gorica, for example, called all workers (men and women regardless of age, sex, race, or ethnicity) the same pejorative term. And just because Gorica may have made discriminatory comments to other workers based on those workers' race or ethnicity does not mean that Gorica gets a pass for improper gender-based comments to Plaintiff. Therefore, Plaintiff has alleged that at least some of Gorica's conduct stems from gender bias.

Turning to the second element, the Court finds that genuine issues of material fact also exist as to whether Gorica's alleged harassing conduct was severe or pervasive. As noted above, a court considers the cumulative impact of all alleged incidents. Here, Plaintiff alleges numerous incidents of Gorica engaging in harassing conduct. In addition to telling Plaintiff that "women in Albania are underfoot" and "to stop being a bitch and go home and take a nap like other women," Gorica allegedly called Plaintiff a "liar." He also directed Plaintiff to work alone and told other male laborers to not speak to her.

While some of Plaintiff's complaints appear inapplicable, such as complaining of not receiving overtime when she was a top earner in overtime. Others, appear significant, despite not being facially sex-based. For example, even if Plaintiff suffered no economic damage from being assigned cleaning tasks, rather than tasks requiring certifications, such conduct could be harassing even if it did not cause Plaintiff economic harm. Plaintiff possessed approximately thirty

certifications. If Plaintiff is correct that Gorica allowed men without the requisite certifications to do the specialized work rather than Plaintiff, Gorica's action could contribute towards a hostile work environment. When considering Plaintiff's allegations cumulatively, the Court finds that a reasonable juror could find that the incidents were severe or pervasive. Therefore, Defendants' motion for summary judgment is denied as to Defendants' alleged violation of N.J.S.A. 10:5-12(a) stemming from Gorica's conduct.

### b. Liability for Plaintiff's claim of hostile work environment sexual harassment

After finding that genuine issues of material fact prevent summary judgment on the hostile work environment claim, the issue becomes who may be potentially liable. Defendants argue that Gorica, as a matter of law, cannot be liable because he was never Plaintiff's employer and because he cannot aid and abet his own conduct. Def. Brf. at 14. Further, although not entirely clear, Defendants appear to claim that to the extent that Gorica created a hostile work environment through harassing conduct, McGlone is not liable for such conduct because Plaintiff did not make McGlone aware of Gorica's conduct. Def. Rep. at 4-5. The Court will address these arguments in turn.

Defendants argue that Gorica cannot be liable for a LAD violation because he was never Plaintiff's employer. Def. Brf. at 14. Defendants add that Gorica, as the alleged primary actor, cannot aid and abet his own conduct. *Id.* In support, Defendants cite to *Swingle v. Novo Nordisk, Inc.*, No. CIV.A.08-1186, 2009 WL 2778106, at *1 (D.N.J. Aug. 27, 2009) and *Tsakonas v. Nextel Commc'ns, Inc.*, No. CIVA 04-CV-1363, 2006 WL 2527998, at *1 (D.N.J. Aug. 31, 2006). Plaintiff responds that Defendants misrepresent the current state of New Jersey law on this issue. Pl. Opp. at 12. In support, Plaintiff points to the more recent cases of *Yobe v. Renaissance Elec.,*

*Inc.*, No. CV 15-3121, 2016 WL 614425, at *1 (D.N.J. Feb. 16, 2016) and *Godfrey v. Thermco,*

No. CIV.A. 13-4750, 2013 WL 5952046, at *1 (D.N.J. Nov. 4, 2013).

The Court agrees with Plaintiff. The LAD primarily places liability for discrimination on the employer. However, it also makes individuals liable for aiding and abetting discriminatory behavior in the workplace. Here, Plaintiff never alleges that Gorica was her employer, rather she alleges that in his capacity as a supervisor (an employee of McGlone), Gorica aided and abetted his own harassing conduct.

Plaintiff claims that Gorica aided and abetted his own harassing conduct in violation of N.J.S.A. 10:5-12(e). N.J.S.A. 10:5-12(e) makes it unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." A plaintiff alleging a violation of N.J.S.A. 10:5-12(e) bears the burden of showing the following:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.

*Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004) (quoting *Hurley,* 174 F.3d at 127).

The question of whether a supervisor can aid and abet his own misconduct under the LAD is not settled. Defendants are correct that the cases they cite to, primarily *Swingle* and *Tsakonas,* support the finding that an individual employee cannot aid and abet his own misconduct. However, Defendants' cited cases precede and conflict with the New Jersey Appellate Division's more recent ruling in *Rowan v. Hartford Plaza Ltd.*, No. A-0107-11T3, 2013 N.J. Super. Unpub. LEXIS 766, 2013 WL 1350095, at *8 (App. Div. Apr. 5, 2013).

As recognized by Judge Linares in *Godfrey* and Judge Wolfson in *Yobe,* the New Jersey Appellate Division's opinion in *Rowan* found that a supervisor can be held liable under the LAD for aiding and abetting his own misconduct. 2016 WL 614425, at *4; 2013 WL 5952046, at *5. In *Rowan*, the court looked to Third Circuit's language in *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 126-127 (3d Cir.1999), which acknowledged the awkward theory of liability, whereby a supervisor can be liable for aiding and abetting another individual's harassing conduct but can escape liability for his own harassing conduct. 2013 WL 1350095, at *7. Further, the court in *Rowan* noted that "the LAD is 'broad and pervasive,' *Melick v. Twp. of Oxford*, 294 N.J. Super. 386, 398 (App. Div.1 996), and should be 'liberally construed in combination with other protections available under the laws of this State.'" *Rowan*, 2013 WL 1350095, at *8 (quoting N.J.S.A. 10:5–3). Recognizing the remedial purpose of LAD, the *Rowan* court concluded that a supervisor can aid and abet his own misconduct under the statute. 2013 WL 1350095, at *8.

While the *Rowan* decision is unpublished and non-binding, it is nevertheless persuasive. 2013 WL 5952046, at *6. In finding the *Rowan* court's reasoning persuasive, the Court joins several other courts within this district. *See Yobe,* 2016 WL 614425, at *4; *Regis v. Int'l Paper Co.*, 2013 U.S. Dist. LEXIS 138270, 2013 WL 5410700 (D.N.J. Sept. 26, 2013); *Vazquez v. Karch*, No. 2:13-CV-03817, 2013 WL 5644295 (D.N.J. Sept. 23, 2013); *Brown-Marshall v. Roche Diagnostics Corp.*, No. 10-CV-5984, 2013 WL 3793622 (D.N.J. July 19, 2013). The LAD is a remedial statute that the legislature enacted to eradicate "the cancer of discrimination." *Jackson v. Concord Co.*, 54 N.J. 113, 124 (1969). While it is admittedly unusual to hold an individual liable for aiding and abetting his own misconduct, doing so furthers the broad remedial nature of the LAD. Therefore, Gorica may be held liable for aiding and abetting his own conduct that created a hostile work environment.

The next issue is McGlone's vicarious liability for Gorica's actions. Defendants appear to argue that the Complaint alleges that Gorica engaged in harassing conduct outside of the scope of his employment and that Plaintiff did not make McGlone aware of such conduct. Def. Rep. at 4. Defendants state, "Plaintiff did NOT offer proof that she complained to BJ McGlone about any alleged harassment by Gorica." *Id.* McGlone does not assert the affirmative defense concerning an effective policy against sexual harassment.

Plaintiff, in turn, first states that "[i]n this case, Defendant Gorica was acting within the scope of his employment when he imposed his double standard on Plaintiff." Pl. Opp. at 14. Plaintiff then argues that taking her allegations as a whole, there is a "genuine issue of material fact" whether McGlone was negligent with respect to Gorica's creation of a hostile work environment. *Id.* Plaintiff adds that McGlone "delegated to Defendant Gorica the authority" to control the environment at the site. *Id.* at 15.

As the movant, Defendant bears the burden of establishing that there are no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. Defendants have not done so. Plaintiff has cited facts suggesting that through his supervisory position, Gorica, controlled the environment of the site. Gorica told the McGlone laborers what to do and when. Gorica, also, appears to have possessed nearly total control over the conditions of employment for the laborers. Moreover, there is a genuine issue of material fact as to whether McGlone was negligent in its oversight of Gorica, that is, McGlone should have been aware of Gorica's treatment of Plaintiff, such as causing Plaintiff to work alone and not assigning Plaintiff tasks for which she had the required certifications. The Court finds that a reasonable juror could find McGlone vicariously liable for Gorica's harassing conduct.

Therefore, Defendants' motion for summary judgment is denied as to Defendants' alleged violation of N.J.S.A. 10:5-12(e).

### c. Retaliation

Defendants also argue that Plaintiff's retaliation claim under the LAD fails because Plaintiff does not allege that McGlone was involved with, or even aware of, Plaintiff's termination. Def. Brf. at 13. Further, Defendants point to the nature of Plaintiff's job. As a unionized laborer, Plaintiff was frequently terminated from one work site and then assigned to another site. *Id.* Plaintiff responds that, "at a bare minimum," she has alleged material facts as to each element of a *prima facie* retaliatory action. Pl. Opp. at 17. Plaintiff claims she engaged in protected activity because she "opposed" the harassing conduct at the site and communicated this "opposition to a supervisor of B.J. McGlone & Co., Inc. and others." *Id.* at 17-18. Plaintiff next claims that she suffered adverse employment decisions when she experienced gender prejudice and, in the end, termination. *Id.* at 19. Finally, Plaintiff argues, without elaboration, that there are "clearly" genuine issues of material fact as to whether a causal link exists between the protected activity and the adverse employment action. *Id.*

Under the LAD, discriminatory retaliation claims are analyzed following the "well-established burden shifting framework of *McDonnell Douglas*." *Puchakjian v. Township of Winslow*, 804 F. Supp. 2d 288, 304 (D.N.J. 2011); *see McKenna v. Pac. Rail Serv.*, 32 F.3d 820, 827 (3d Cir. 1994) ("The New Jersey Supreme Court has generally looked to standards developed under federal anti-discrimination law for guidance in construing the LAD."). Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discriminatory retaliation. This requires a plaintiff to demonstrate that (1) she engaged in a protected activity known by the employer; (2) thereafter her employer unlawfully retaliated against her; (3) her participation in the

protected activity caused the retaliation. *Craig v. Suburban Cablevision, Inc.*, 140 N.J. 623, 629 (1995). If a Plaintiff establishes a *prima facie* claim, "a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions." *Puchakjian*, 804 F. Supp. 2d at 304 (citing *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 803 (1973)). If the employer "answers its relatively light burden by articulating a legitimate, nondiscriminatory reason for the unfavorable employment decision" the burden returns to the plaintiff, who must show by a "preponderance of the evidence that the employer's explanations were merely a pretext for its actions." *Id.*

The Court agrees with Defendants. Despite Plaintiff's arguments that she has shown material facts disputing Defendants' positions, the Court finds that there are no genuine issues of material fact as to Plaintiff's retaliation claim. Plaintiff claims that she "opposed" the harassing conduct at the site and complained about these comments. However, the facts alleged do not reflect that she complained of this misconduct to McGlone. Plaintiff does present evidence that she reported Gorica's conduct to fellow laborers and Jose Colon, a Union representative. In fact, she sent two letters to Colon and was terminated shortly thereafter. Plaintiff, however, does not present evidence that McGlone was aware of her letters to, or meeting with, Colon about Gorica's conduct. Thus, as to her termination, Plaintiff fails to present sufficient evidence establishing a genuine issue of material fact as to the the first element, that is, that McGlone or Gorica unlawfully retaliated against her.

Plaintiff argues that Gorica was responsible for her termination because of a comment from her shop steward. The shop steward allegedly informed Plaintiff of her termination by handing her a check and saying, "[h]ere, Marie. He did it to you. Here you go." Plaintiff claims she understood the "he" to be Gorica. No evidence from the shop steward was presented in

conjunction with the motion, much less evidence from the shop steward indicating that he was referring to Gorica. The statement is hearsay and, if the matter were to proceed to trial, would require the shop steward's testimony to be admitted unless a hearsay exception applied. The Court is not aware of any applicable exception nor has Plaintiff cited one. More importantly, the allegation is insufficient to show that Gorica knew of Plaintiff's letters and complaints to Colon, which Plaintiff would have to establish before proving Gorica retaliated against her for the complaints.[7] Thus, genuine issues of material fact do not exist as to whether Defendants' conduct was retaliatory.

Therefore, Defendants' motion for summary judgment is granted as to Defendants' alleged violation of N.J.S.A. 10:5-12(d).

## IV.    **CONLCUSION**

For the reasons stated above, Defendants' motions for summary judgment (D.E. 91) is **GRANTED** as to Defendants' liability for John Nini's misconduct under N.J.S.A. 10:5-12(a) and as to Defendants' liability for retaliation under N.J.S.A. 10:5-12(d). Defendants' motion is otherwise **DENIED**. An appropriate Order accompanies this Opinion.

Dated: July 16, 2018

John Michael Vazquez, U.S.D.J.

---

[7] There appears to be deposition testimony that supports Gorica's involvement in Plaintiff's termination, apparently for unrelated infractions by Plaintiff on the job site. D.E. 94-4 at 40:14-20. However, Plaintiff did not rely on this information in her Supplemental Statement of Material Facts, and Plaintiff did not cite to it in her opposition brief. As a result, the Court does not consider it in deciding the current motion. In any event, the deposition testimony does not reveal that Gorica knew that Plaintiff had complained to the Union about his conduct, which is a necessary precursor for Plaintiff to establish before she can persuasively allege that Gorica had her terminated as a result of her complaints.